The next case on for argument is United States v. Vinyas. Good morning, Your Honors. May it please the Court. Daniel Habib, Federal Defenders of New York, on behalf of Francis Patino Vinyas. The government's misleading disclosure of Vinyas' oral statement caused the defense to forego a meritorious motion to suppress. Under a straightforward application of this Court's decision in McElroy, Vinyas is entitled to a new trial. The notice was misleading because the government's use of the phrase initial inspection referred, as a matter of ordinary usage, to the first inspection, that is, the inspection captured on video that occurred in the terminal's public area. The district court agreed, finding that the government's disclosure was vague, imperfect, imprecise, and unfortunate, and that the government's notice would not have triggered a motion to suppress because the law is clear that Miranda warnings are not required in the non-custodial setting of a public search in an international airport terminal. That understanding was also consistent with the testimony of the government's witnesses. Officer Santos testified that the phrase initial inspection would not refer to the back room where the bottle was broken open. And Officer Gisilo testified that Vinyas was not taken to the back room until Officer Santos was, quote, done with his examination of the luggage. Mr. Habib, if we agree with you that this was misleading or at least ambiguous, is it fair to say that we need to determine first whether it was likely to be meritorious and then whether substantial prejudice has been shown? I think under McElroy those inquiries are related. We agree that to prevail we must show substantial prejudice. As to the likely merits of any motion to suppress, McElroy says only, reversed and remanded for a new trial, saying only that a motion would not have been frivolous. We've made a much stronger showing than that. We've shown that a number of factors this court has consistently said militate in favor of a finding of custody were present here. Vinyas was marched by four uniformed armed customs officers to a private search room. They took his passport. He was not free to leave, and Officer Santos testified that the purpose of moving him to a private search room was to prevent him from leaving. The record is simply silent with respect to a number of other factors that this court has said are material, for example, the duration of the questioning, whether Vinyas was restrained, whether the officers displayed their weapons, what the other questions that preceded the store question were. And so on this record we feel that we've more than satisfied the burden that McElroy lays out. Counsel, this case and McElroy are both cases which are a little unusual because the claim is because of government misconduct we were prevented from developing a record. We were prevented from having our suppression hearing, so we don't have to meet certain other standards. Okay. Are there any other cases other than McElroy that have used the standard? It could not be said that the motion would have been frivolous. I understand why it's a useful test in this context, but are there any other cases that have used that standard? So the parties haven't identified any other cases involving an error of this nature, that is to say a misleading Rule 16 disclosure that causes the defense to forego a suppression motion. That said, there's good reason that McElroy articulated that standard, and that's because when a motion is foregone through no fault of the defense, the record will often be silent, as it is here, on material factors. And that's why advancing the inquiry and asking whether the motion would necessarily have succeeded puts the cart before the horse. In FNU-LNU, this Court said, where the district court makes no finding of custody, we ordinarily remand. And that's why the standard has to be more forgiving in this context. If we conclude that your motion to suppress would have failed, even with the benefit of additional discovery, what evidence can you point to that the phrasing of the disclosure substantially prejudiced Venus' rights? In McElroy, the whole premise of the cross-examination rested on the non-suppressed statement. Here, there was substantial evidence in the form of all the text conversations that provided a basis for inferring knowledge. How can you show a substantial prejudice? Your Honor's question goes to harmlessness. Let me say at the outset that the government has not argued harmlessness with respect to the Storr statement. They have argued harmlessness with respect to the prosecutorial misconduct claim, but not with respect to the Storr statement, and for good reason. The government referred to the Storr statement 11 times in its jury arguments, twice it said that the statement was- Your Honor, you've done this counting, but in the counting you don't really discuss the other evidence that was before the jury regarding knowledge. It's true that the government referred to the Storr statement as devastating and repeated its references a couple of times, or several times, 11 times. But you do have to show substantial prejudice, don't you? That's right, and let me say two more things about the government's jury arguments. As the Court noted, 11 references, twice the statement was referred to as devastating, and once the government argued that Venus's changing stories alone were compelling proof of knowledge, which was the only disputed evidence, the only disputed point in the case. But on the question of harm, I think it's instructive to look at McElroy as well. The untainted evidence of guilt in McElroy was compelling, far more compelling than the evidence present in this case. One witness, a cooperator, testified that McElroy handed her a bag containing heroin. A second witness, the undercover officer, testified that McElroy was present at the heroin sale and was ready to receive the buy money. That is, there was firsthand evidence that McElroy had distributed and conspired to distribute heroin. Nonetheless, McElroy found substantial prejudice. In this case, where the government's evidentiary showing of knowledge was weaker than the evidentiary showing in McElroy, we think the finding of substantial prejudice is dictated by the result there. And again, the Court can take a step back and look at other concealed contraband cases where the evidence has been found insufficient as a matter of law and consider some of the factors also present here. Concealed contraband, well hidden. A defendant with no prior criminal record. No directly inculpatory statements. No documents relating to the conspiracy or mentioning the crime. Extensive text conversations that look like it's in code and insistence on transporting the bottle and a declaration that there were no food, beverages, or gifts being transported across the border. There was substantial other evidence as well. So I have a little difficulty in looking for the substantial prejudice in this ambiguous statement. I don't see cross-examination that went differently than it would have or that the premise of the defense was challenged the way it was in McElroy. Am I wrong in that? With respect, Your Honor, I think the impact is this. The defense's theory was that Vinas was enlisted as an unwitting mule by a friend in the Dominican Republic. The defense was entirely consistent with his post-arrest, post-Miranda statement to Agent O'Malley of HSI. The harm of the store statement is that it was directly contradictory to the second post-Miranda statement and directly contradictory to the theory of defense. The two statements were mutually exclusive. Vinas could not both have bought the bottle at a store and have received it from a friend. And so the inquiry isn't how would the cross-examination have changed. The inquiry is what impact did this inconsistency have on the jury's consideration of the question of knowledge. And the best evidence of its impact is the government's own argument. The government told the jury that Vinas's changing stories alone, that is, without regard to any other evidence, were compelling proof of knowledge. And if that's so, it would seem, in particular in light of the strength of the government's case on McElroy itself, that substantial prejudice has been shown here. And that's why the government hasn't argued harmlessness. Counsel, McElroy said that the standard was it could not be said that the motion would have been frivolous. You say the government hasn't argued harmlessness, but you say we still have to show prejudice. I'm not clear what the test of prejudice is that you say we should look to to determine whether you've met, whether it's something in addition to the McElroy standard, and if so, what that is. So McElroy, McElroy itself, Your Honor, indicates that reversal and remand for a new trial is required, as Your Honor said, if the motion to suppress would not have been frivolous. We think it's also appropriate under this court's new trial cases to consider, as Judge Carney pointed out, other evidence in the case. So we think that if Vinas shows both that a motion to suppress would not have been frivolous and that he suffered prejudice in the context of the trial evidence as a whole, he's entitled to relief. It's the latter point that I'm just asking you for what your test is. Do you say you have to show that we were prejudiced or that the government has to show that we were not prejudiced? Well, I think we so we certainly have to show that a motion to suppress would not have been frivolous. We've done so. But I'm asking for the second issue with respect to prejudice, which you say we agree we have to show. What is it that you say we have to show with respect to prejudice on the basis of a motion? I guess you say we've made a sufficient showing that the motion would not have been frivolous. We then have to argue that if the statement were suppressed, the result of the trial would have been different? No, Your Honor. I think if the court wants to consult pages 42 and 43 of our opening brief, we cite a decision from this court, United States v. Stevens, a 1993 decision, which says a defendant seeking a new trial based on Rule 16 error must show substantial prejudice. The court lays out certain factors, the nature of the evidence sought, the extent to which it bore on critical issues in the case, the reason for its non-production, and the strength of the government's untainted proof. We think, considering those factors, we've shown substantial prejudice. So I think that's the inquiry, Your Honor. The taint you're claiming is in the ambiguity of the disclosure that the government made? Yes, Your Honor. We are looking at the strength of the government's untainted proof, which is why I was focusing earlier on the extensive text messaging. So, again, I'm at the risk of repetition. Recall again what the strength of the government's untainted proof was in McElroy itself. A cooperating witness testified that McElroy gave her heroin, and this was a prosecution for possession with intent to distribute heroin and conspiracy. A cooperating witness testified that McElroy gave her heroin. An undercover testified that McElroy was physically present at the scene. I'm asking you to comment on the strength of the government's untainted proof in your case. And I guess you're saying that there was evidence, but it was really this that was so powerful, as the government made out, that the whole proceeding was in effect tainted by its use. Is that right? That is right, Your Honor. And I would encourage the Court to consider the concealed contraband cases cited in our opening brief. Torres, Samaria, Rodriguez, Lorenzo, all of those cases concern similar fact patterns. And so, again, some of the factors present in this case are also present here. There's concealed, well-hidden contraband. There's a person who makes no directly inculpatory statements. The person is not named in documents material to the conspiracy. There is no evidence that Vignez exercised a supervisory role within the conspiracy. There is no evidence of payments made to Vignez reflecting his portion of the proceeds of the conspiracy. And so, again, it's not enough that there are suggestive statements or statements that could be read as suspicious. And that flows directly from those concealed contraband cases, in which there were suspicious phone conversations that had been intercepted. But where there's no direct discussion of narcotics and no directly inculpatory statements, the contrast between the Storr statement on the one hand and the Cello statement on the other compels the inference that Vignez suffered prejudice. And that's why, again, the government cited the statement 11 times to the jury, and that's why the government has not argued harmlessness in this Court. Thank you, Mr. Habib. You've reserved two minutes. Thank you. Mr. Harris. Good morning. May it please the Court. My name is Ryan Harris, and I represent the government on this appeal. The district court did not abuse its discretion in concluding that the government complied with its discovery obligations under Rule 16. By providing the statement to defense counsel, it did precisely that. No, Vignez claimed that nonetheless the government violated Rule 16 by providing an objectively false and misleading description of the physical location where that statement was made. You have to agree that there's at least ambiguity in the phrase first inspection. Isn't that it, first inspection? Your Honor, the language of the letter was initial inspection of the defendant's luggage by U.S. Customs and Border Protection officers. And the initial inspection, actually, I mean, that wasn't accurate. The luggage was examined, was closed up again, and then moved to a separate search room. Your Honor, I would disagree that this was not accurate. The initial inspection encompassed both the public and private areas of the baggage examination room. And the reason we used initial was because, as was disclosed to defense counsel during discovery and came out during trial, a second inspection occurred after this very significant event of the discovery of cocaine. The defendant's arrest and process, which is the CBP officers, went through. Counsel, you're arguing that the disclosure in the October 20th letter was accurate. But that's not what the district court found. The district court said it was imprecise, vague, unfortunate, and imperfect. Your Honor, there's no question that if I were to go back in time, I would certainly phrase the letter differently to make sure there was no ambiguity. However, the district court . . . It wasn't only a question of being ambiguous. It was misleading. As the district court said, well, expounding on what the district court said, no reasonable lawyer looking at that disclosure would think it was the basis for a motion to suppress. Your Honor, two things to respond. The district court, in its opinion, stated that it did not believe, and I'll just quote from that, it did not believe that any pertinent evidence was hidden or concealed, no matter withheld. The district court did say that the language of the letter was vague and imprecise with respect to a physical location. And I would agree that that is the case. However, vague . . . It wasn't just a physical location, though. It was the setting. There's an open area and a private area, one individual conducting the inspection and four people surveilling the inspection out of the public view. Yes, Your Honor. But Officer Santos, during trial, made clear that the purpose of these private search rooms are to continue baggage examinations in a more private area, and he said the reason they moved was for further inspection here. Now . . . But he never disclosed that prior to trial, and you never disclosed that prior to trial. Your Honor, we disclosed government exhibits that show that the private search rooms are part of the baggage examination area, and also the letter makes no representation to say and to divide this inspection into two separate areas. Why was the disclosure of that statement made only on October the 20th, which was reasonably shortly before trial and after you had made all of the other disclosures? Yes, Your Honor. So the government provided all the paperwork that was repaired during the course of this trial well in advance. This particular CBP officer, shortly after this arrest, was transferred to the Virgin Islands, and so we had difficulty getting a hold of him. Then, in the preparation of trial, we were prepping him over the phone, and that's when we learned of the statement the same day we prepared this letter and sent it out. It was simply a matter that the statement was not memorialized in his paperwork, and when we became aware of it, we immediately turned it over. Now, I want to address one particular premise that Venus relies on to say that this statement was objectively misleading, which is to say that the testimony of Officer Santos supports their interpretation of the language of the letter, and it does not, and I'd like to explain that a little more. Now, at trial, defense counsel asked Officer Santos, where is the initial inspection area? However, critically, he failed to clarify that he was referring to luggage inspections, not passport inspections, not personal inspections, and this is actually a very critical— That just establishes the ambiguity of the phrase initial inspection. No, it doesn't, Your Honor, because the letter clarified that the letter was referring to the initial inspection of Venus' luggage. It had that qualifier that the question did not, and so Officer Santos' response was to say, I view the initial inspection area to be the primary inspection area, which is an area where no luggage inspections of any kind occur, only passport inspections. Perhaps you could move on and address the questions of substantial prejudice and of the meritoriousness of the suppression motion. Yes, Your Honor. So there was no substantial prejudice established here. Now, Venus argues on appeal that the court should have applied this kind of non-frivolous standard citing to language from McElroy, but McElroy did not cite that as a legal standard. No court has ever applied such a legal standard or cited to McElroy for that proposition. You're not suggesting McElroy was wrong? I'm not citing— Or that we don't have to follow McElroy. It's never been distinguished, right? What I'm saying, Your Honor, is, first, McElroy is distinguishable on its facts in that, in that case, the court concluded the government actually left out statements that should have been turned over, number one. And number two here is that McElroy is distinguishable because it did not cite the language as a legal standard, and I think that that is not something that any court has embraced. And, more importantly, this non-frivolous standard would undermine the substantial prejudice standard that this defendant bears as a burden for a motion for a new trial. If one— Your colleague actually makes a distinction. There is a question. What do we do with the argument that a suppression hearing should have been held? So McElroy says the standard with respect to that is you have to ask whether we could say that the result would not be frivolous, that the motion would not have been frivolous. So if you can't say that it's frivolous, then a motion could have been made. We don't know what the result of that motion would have been, but the motion would have been made. So assume for the moment that the statement was suppressed. When all of the evidence came out, if we can't say that the motion was frivolous, then your colleague concedes that we still have to ask the question whether there was substantial prejudice. Yes, Your Honor. So your colleague doesn't say McElroy does away with substantial prejudice. McElroy simply answers the first question with respect to what do we do with the fact that there was no suppression hearing. Your Honor, what I would say to that is to say that we can only articulate a suppression argument that would rise to the level of non-frivolous would kind of undermine the substantial prejudice standard here. Why can't we simply say okay, this would have been a non-frivolous motion to suppress the statement. Assume for the moment that the statement would have been suppressed. So the prior inconsistent statement would have been excluded. Can we say that the defense was substantially prejudiced by having the prior inconsistent statement admitted at trial? Well, I would have two answers to that, Your Honor. One is that even applying this non-frivolous standard, the government would say that the defendant has not met that burden here. The facts here are almost identical to the United States v. Broughton case. And no court has ever held that a defendant in a routine border inspection being asked a question that relates to routine border inspection duties here. Namely, the importation of an item being brought from abroad and what its nature is. In a setting where a defendant has no inkling that evidence of a crime has been discovered to be a custodial situation. Broughton is virtually identical here. In fact, the facts here are even stronger than Broughton because here no white powdery substance had been discovered. And so that's one of the points I would make. The second point I would make is that the evidence even putting aside this statement, which I believe certainly would not have been suppressed, and I believe any argument would have been a frivolous argument, is that the untainted evidence was very strong here. These text messages showed communications between the defendant and his co-conspirator over a period of days, intent. Since knowledge was the essential issue, I'm finding it difficult to consider the text messages, which were somewhat cryptic, apart from the prior inconsistent statement. The prior inconsistent statement, as you reasonably emphasized in your summation and during the course of the trial, kind of casts everything in a different light. It undercuts Venus' credibility substantially and it lends a different cast to the texts. Why isn't that a correct take on the evidence? It's certainly a fact on which we relied. However, the strongest evidence that we had was a combination of the final set of text messages, where the defendant indicated that he was getting the bottle the night beforehand, earlier than he had told the special agent, and was present while it was being prepared. And as the CBP officers testified, they could tell from looking at the bottle that that preparation process involved cutting the bottom off of the bottle, stuffing 40 pellets of cocaine inside the bottle, and then gluing it back on, gluing a cover onto it to conceal it. And this is a process that he was present for, and then lied to the special agent about the fact that when he got it, and whether he was involved in that preparation process. That was the most damning fact that we highlighted in our summation and rebuttal, and that alone, along with the other text messages, of which I would point out he sent his co-conspirator a picture of the inside of his luggage as he was arriving, to show the luggage that he would be transporting the cocaine in, and that he had room. He also discussed whether or not to put the roots in, whether they could bring this back. There was a sustained period of contact. And the final text messages, combined with the way in which this bottle was prepared, was our strongest evidence, not this particular statement. Thank you, Your Honor. Thank you, Mr. Harris. Mr. Habib, two minutes. Thank you, Your Honor. I think that the court has grasped that the notice was misleading, so let me turn to the impact. Judge Codall, this court absolutely could strictly follow McElroy, conclude that this case is a posit to McElroy, and provide the McElroy remedy. That would be a permissible disposition for this court. If we turn to consider the untainted evidence of the government's case, first, Judge Carney, on page 46 of our opening brief, we cite United States v. Rodriguez, a case in which the jury could have inferred that the defendant and his co-conspirator spoke by phone and discussed, quote, some aspects of the transaction, including logistics, but there was no proof that the participants had discussed controlled substances. And, again, Rodriguez found that evidence insufficient under a Rule 29 standard, a far more onerous standard than the substantial prejudice standard at issue here. Let me say a few other things. The Broughton case is not at all virtually identical to this case. If the court reads Broughton in a summary order, the court will find that there was actually no questioning of the defendant at all in that case, and the statements had been made voluntarily. The government's further discussion that Venus was present for the preparation of the bottle is not at all compelled by the text messages. That was the government's inference from the text messages, and it would, in fact, be an equally plausible inference that a bottle that took this amount of time and sophistication to prepare for shipment could have been assembled outside of Venus's presence. And if that's so, the government's inference for knowledge fails. Finally, let me take a step back. This is a case where the defense would undoubtedly have moved to suppress with proper notice of the statement. This is also a statement that the government itself said twice was devastating to the defense. The statement, the changing stories the government said alone were compelling proof of knowledge, the only pointed issue in this case. The government did not argue harmlessness in its brief, and in light of its multiple invocations of the statement to the jury, it was not positioned to do so. The evidence of guilt is much weaker than it was in McElroy, and the remedy in McElroy was reversal and remand for a new trial. In light of the government's use of the statement at trial and this court's clear precedent in McElroy, a new trial is required. Thank you. Thank you. Thank you both. We will reserve decision in this case.